IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

OHIO COUNTY DEVELOPMENT AUTHORITY,
a West Virginia public corporation
and CABELA'S WHOLESALE, INC.,

    Plaintiffs,

v.                                          Civil Action No. 5:09CV27
                                                      (STAMP)
PEDERSON & PEDERSON, INC.,
CAST & BAKER CORPORATION,
PENNSYLVANIA SOIL AND ROCK
INCORPORATED and
PROFESSIONAL SERVICE INDUSTRIES, INC.,

    Defendants.

**MEMORANDUM OPINION AND ORDER
DENYING DEFENDANT PROFESSIONAL SERVICE INDUSTRIES, INC.'S
MOTION TO DISMISS COUNTS I, III, IV, AND V
OF THE PLAINTIFFS' COMPLAINT;
DENYING DEFENDANT PROFESSIONAL SERVICE INDUSTRIES, INC.'S
MOTION TO DISMISS CO-DEFENDANT
CAST & BAKER CORPORATION, INC.'S CROSS-CLAIM
FOR IMPLIED INDEMNITY AND CONTRIBUTION;
GRANTING WITHOUT PREJUDICE
PROFESSIONAL SERVICE INDUSTRIES, INC.'S
MOTION TO DISMISS CO-DEFENDANT
CAST & BAKER CORPORATION, INC.'S CROSS-CLAIM
FOR EXPRESS INDEMNITY AND
GRANTING CAST & BAKER CORPORATION, INC.
LEAVE TO AMEND EXPRESS INDEMNITY CROSS-CLAIM**

I.  Procedural History

The plaintiffs, Ohio County Development Authority ("OCDA") and Cabela's Wholesale, Inc. ("Cabela's"), filed a complaint against Pederson & Pederson, Inc. ("Pederson"), Cast & Baker Corporation ("Cast & Baker"), Pennsylvania Soil and Rock, Inc. ("Pennsylvania Soil and Rock"), and Professional Service Industries, Inc. ("PSI") for negligence, professional negligence, breach of contract, breach of express warranties, and breach of implied warranties stemming

from the engineering and construction of the commercial distribution center located in Ohio County, owned by plaintiff OCDA and leased by Cabela's.  The defendants removed this case from the Circuit Court of Ohio County, West Virginia.  The plaintiffs settled their claims against defendants Pedersen and Pennsylvania Soil and Rock.  This Court entered an order on August 7, 2009, dismissing with prejudice the plaintiffs' claims and any cross-claims against those defendants.  Defendant PSI filed a motion to dismiss Counts I, IV, and V of the complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) and Count III pursuant to Rule 12(b)(1).  The plaintiffs responded in opposition.  PSI did not reply.  Defendant Cast & Baker filed a cross-claim against PSI for contribution and/or indemnity.  PSI filed a motion to dismiss the cross-claims, to which Cast & Baker filed a response.  PSI filed a reply.  For the reasons set forth below, PSI's motion to dismiss the plaintiffs' complaint is denied and PSI's motion to dismiss the cross-claims is granted in part and denied in part.

## II.  Facts[1]

Plaintiff OCDA owns a commercial distribution facility in Ohio County, West Virginia, which it leases to plaintiff Cabela's.  In 2004, the plaintiffs decided to expand the facility.  Because the facility was constructed on mountainous terrain, the expansion was

---

[1] In accordance with the applicable standard of review, stated below concerning a motion to dismiss, this Court will accept, for the purposes of deciding this motion, the factual allegations contained in the complaint as true.

built on a "dirt pad." Defendant Pedersen served as the civil engineer for the design and development of the facility site. Defendant Cast & Baker conducted earthwork construction, building pad construction, grading, drainage, sewer, erosion control, and other related matters in the expansion project. Defendant Pennsylvania Soil and Rock performed services and provided equipment and materials in connection with the preparation, excavation, boring, analysis, testing and other related matters pertaining to geotechnical, surface, and subsurface preparation of the building site. Defendant PSI performed services and provided equipment and materials in connection with the analysis, testing, and other related matters pertaining to geotechnical, surface, and subsurface preparation of the building site in connection with the expansion. Defendant PSI did not enter into a contract with the plaintiffs. Instead, PSI contracted to perform work for defendant Cast & Baker.

After completion of the expansion, Cabela's representatives noticed that the floor of the expansion was sinking and cracking. The plaintiffs allege that an investigation showed that the dirt pad was improperly constructed, causing the cracks and sinking. The plaintiffs allege that certain earthen and fill materials in the facility's foundation were either undetected or improperly allowed to remain there. Further, the plaintiffs allege that the fill materials used in constructing the dirt pad were not properly

compacted and monitored. The plaintiffs seek at least $8,402,731.00 in damages.

III. Applicable Law

A. Rule 12(b)(6) Motion to Dismiss

In assessing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept all well-pled facts contained in the complaint as true. Nemet Chevrolet, Ltd v. Consumeraffairs.com, Inc, --- F.3d ----, 2009 WL 5126224, *3 (4th Cir. Dec. 29, 2009). However, "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes." Id. (citing Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)). This Court also declines to consider "unwarranted inferences, unreasonable conclusions, or arguments." Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599, 615 n.26 (4th Cir. 2009).

It has often been said that the purpose of a motion under Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; it is not a procedure for resolving a contest about the facts or the merits of the case. 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (3d ed. 1998). The Rule 12(b)(6) motion also must be distinguished from a motion for summary judgment under Federal Rule of Civil Procedure 56, which goes to the merits of the claim and is designed to test

4

whether there is a genuine issue of material fact.  <u>Id.</u>  For purposes of the motion to dismiss, the complaint is construed in the light most favorable to the party making the claim and essentially the court's inquiry is directed to whether the allegations constitute a statement of a claim under Federal Rule of Civil Procedure 8(a).  <u>Id.</u> § 1357.

A complaint should be dismissed "if it does not allege 'enough facts to state a claim to relief that is plausible on is face.'" <u>Giarratano v. Johnson</u>, 521 F.3d 298, 302 (4th Cir. 2008) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  "Facial plausibility is established once the factual content of a complaint 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" <u>Nemet Chevrolet</u>, 2009 WL 5126224 at *3 (quoting <u>Iqbal</u>, 129 S. Ct. at 1949). Detailed factual allegations are not required, but the facts alleged must be sufficient "to raise a right to relief about the speculative level."  <u>Twombly</u>, 550 U.S. at 555.

B.   <u>Rule 12(b)(1) Motion to Dismiss</u>

A party may move to dismiss an action for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). The burden of proving subject matter jurisdiction on a Rule 12(b)(1) motion to dismiss is on the party asserting federal jurisdiction.  A trial court may consider evidence by affidavit, deposition, or live testimony without converting the proceeding to one for summary judgment.  <u>Adams v. Bain</u>, 697 F.2d 1213, 1219 (4th

5

Cir. 1982); <u>Mims v. Kemp</u>, 516 F.2d 21 (4th Cir. 1975).  A lack of subject matter jurisdiction may be asserted at any time by any interested party either in the form of the answer or in the form of a suggestion to the court prior to final judgment.  5B Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1350, (3d ed. 1998).  Because the court's very power to hear the case is at issue in a Rule 12(b)(1) motion, the trial court is free to weigh the evidence to determine the existence of its jurisdiction.  No presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.  <u>Materson v. Stokes</u>, 166 F.R.D. 368, 371 (E.D. Va. 1996). Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.  Fed. R. Civ. P. 12(h)(3).

IV.    <u>Discussion</u>

A.    <u>Negligence Claim - Count I</u>

PSI contends that the plaintiffs' negligence claim should be dismissed because of the economic loss rule.  West Virginia has adopted a hybrid approach to the economic loss rule.  <u>Aikens v. Debow</u>, 541 S.E.2d 576, 590 (W. Va. 2000).  A party who sustains "purely economic loss from an interruption in commerce caused by another's negligence may not recover damages in the absence of physical harm to that individual's person or property, a contractual relationship with the alleged tortfeasor, or some other

special relationship" between the parties.  Id. at 589.  Whether a defendant owes a duty of care to the plaintiff is a matter of law for this Court, not a question of fact for a jury.  Syl. pt. 4, Parkette, Inc. v. Micro Outdoors Advertising, LLC, 617 S.E.2d 501 (W. Va. 2005).

The plaintiffs first contend that a Rule 12(b)(6) motion is not the time to determine whether an affirmative defense is applicable to a plaintiff's claim and that, as a general rule, a Rule 12(b)(6) motion does not reach the merits of an affirmative defense.  While this may be true as a general rule, "where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)."  Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007).  Therefore, this Court will examine whether the complaint "sets forth on its face the facts necessary to conclude" that the plaintiffs' claims are barred by the economic loss rule. Id.

The plaintiffs state that the economic loss rule does not apply to their negligence claim because they allege they have sustained far more than purely economic loss.  The economic loss rule applies when the property damage involves the property itself, absent "a sudden calamitous event."  Star Furniture Co. v. Pulaski Furniture Co., 297 S.E.2d 854 (W. Va. 1982).  Here, the parties disagree on what constitutes the property "itself."  PSI contends that the entire distribution facility and foundation is the

property itself. See Dean v. Barrett Homes, Inc., 968 A.2d 192 (N.J. Super. A.D. 2009) ("[T]he sounder view is expressed by . . . the majority of jurisdictions that have addressed the critical issue. . . . [T]he [problem area of the structure] was an integrated component of the finished product of that house."). The plaintiffs believe that only the dirt pad is the property itself and that the facility is another distinct property. See Stearman v. Centex Homes, 92 Cal. Rptr. 2d 761, 769 (Cal. Ct. App. 2000) ("When a defective foundation results in cracked walls, ceilings and counter tops throughout the home, recovery of strict liability damages is not barred by the economic loss rule.").

This Court finds that it need not decide whether the foundation and the building together constitute the "property itself" or whether the only the dirt pad is the "property itself." Assuming, without deciding, that the dirt pad is the property itself, the economic loss rule would not apply as property damage would have resulted to property other than the dirt pad. Assuming, without deciding, that the dirt pad and the building together make up the property itself, this Court still must deny the motion to dismiss as to the negligence claim, because it cannot determine, based on the complaint, whether a special relationship existed between the plaintiffs and PSI.

As discussed above, in West Virginia, "the common thread which permeates the analysis of potential economic recovery in the absence of physical harm is the recognition of the underlying

8

concept of duty. Absent some special relationship, the confines of which will differ depending upon the facts of each relationship, there simply is no duty." <u>Aikens</u>, 541 S.E.2d at 590. The <u>Aikens</u> court explained:

> [t]he existence of a special relationship will be determined largely by the extent to which the particular plaintiff is affected differently from society in general. It may be evident from the defendant's knowledge or specific reason to know of the potential consequences of the wrongdoing, the persons likely to be injured, and the damages likely to be suffered. Such special relationship may be proven through evidence of foreseeability of the nature of the harm to be suffered by the particular plaintiff or an identifiable class and can arise from contractual privity or other close nexus.

<u>Id.</u> at 589.

The Supreme Court of Appeals of West Virginia further defined this "special relationship" in <u>Eastern Steel Constructors, Inc. v. City of Salem</u>, 549 S.E.2d 266 (W. Va. 2001). <u>Eastern</u> presents a different factual scenario from the present case, however. In that case, the design professional and the contractor were not in privity as each was individually hired. <u>Id.</u> at 275. After the design professional failed to disclose certain sub-surface rock conditions, the contractor brought suit. <u>Id.</u> at 269. The court found that the contractor must rely on design documents to calculate his bid and may be subject to oversight by the design professional during the construction of the project. <u>Id.</u> at 275. The court found that reliance and oversight fulfilled the foreseeability of harm requirement. <u>Id.</u> Further, the court stated that this "properly places the duty of care on the party who is in

9

the best position to guard against the type of negligence herein asserted." Id.

In 2005, the Supreme Court again confronted a similar question, but narrowed its holding from Eastern. Parkette, 617 S.E.2d at 507. In Parkette, the plaintiff, Parkette, Inc., was a company that entered into a lease to allow Micro Outdoors, LLC ("Micro") to construct an outdoor advertising sign on its property. Id. at 503. Micro contracted with Trinity Products for sign parts. Id. Trinity Products then contracted with Cornerstone, an engineering company, to design the sign. Id. After the sign was completed, the soil around the foundation of Parkette's building settled and Parkette alleged the building was beyond repair. Id. at 504. In that case, Parkette sued Cornerstone for negligence. Id. The court stated that the situation differed from the situation in Eastern in that Eastern was "a narrowly written case" that involved a special relationship between a contractor and a design professional that are both "hired by the same owner." Id. at 507. In Parkette, the court found that because the case involved property damage, it was "not a non-economic case" as was Eastern. Id. Additionally, Parkette involved "several layers of contracts" rather than "a suit between two parties who were both hired by the same property owner." Id. The court further emphasized the "separate transaction" between Trinity Products and Cornerstone. Id.

In 2006, the Southern District of West Virginia applied Parkette and Eastern in the context of a subcontractor bringing a suit against an engineer. Affholder, Inc. v. North Am. Drillers, Inc., No. 2:04-cv-0952, 2006 WL 3192537 (S.D. W. Va. Nov. 1, 2006). In Affholder, the city separately contracted with both an engineer and a construction company. Id. at *1. The construction company contracted with the plaintiff subcontractor. Id. The court held that the Supreme Court of Appeals of West Virginia would extend Eastern to cover negligence claims by a subcontractor "so closely aligned and involved with a project, contractually and factually," as was the plaintiff in that action. Id. at *16. The court found that the plaintiff: (1) was tied to the requirements of the prime contract; (2) performed most of the critical work of the project; (3) was involved at the pre-bid stage; and (4) was given data by the engineer that the engineer knew would be relied upon by the plaintiff. Id.

At this time, without, at a minimum, seeing the contract between PSI and Cast & Baker or the contract between Cast & Baker and the plaintiffs, this Court cannot say with certainty that a special relationship under West Virginia law did or did not exist. This Court holds that further discovery is necessary in this case. Accordingly, PSI's motion to dismiss is denied as to this claim of the complaint.

B.  <u>Breach of Contract Claim - Count III</u>

PSI argues that the plaintiffs lack standing under Rule 12(b)(1) to bring a breach of contract claim. West Virginia law allows a non-party to a contract to maintain a cause of action arising from that contract "only if it was made for his or her 'sole benefit.'" <u>Eastern</u>, 549 S.E.2d at 403; W. Va. Code § 55-8-12. In determining whether a party is a third-party beneficiary to a contract, the Supreme Court has stated:

> In the absence of a provision in a contract specifically stating that such contract shall inure to the benefit of a third person, there is a presumption that the contracting parties did not so intend and in order to overcome such presumption the implication from the contract as a whole and the surrounding circumstances must be so strong as to be tantamount to an express declaration.

Syl. pt. 2, <u>Ison v. Daniel Crisp Corp.</u>, 122 S.E.2d 553 (W. Va. 1961). The contract between PSI and Cast & Baker must show that it was for the sole benefit of the plaintiffs, not that it was for the benefit of the contracting parties. Merely showing that the contract would result in professional work by PSI that would ultimately be relied upon by the plaintiffs is not enough to maintain a breach of contract action. <u>Eastern</u>, 549 S.E.2d at 278.

The plaintiffs allege that there is a contract that states that PSI will provide services and materials to, or for the benefit of the plaintiffs. This Court cannot say at this time whether the plaintiffs are third party beneficiaries to the contract between Cast & Baker and PSI. Accordingly, PSI's motion to dismiss is denied as to this claim of the complaint.

C. Breach of Express Warranty and Implied Warranty Claims - Counts IV and V

PSI contends that this Court should dismiss the plaintiffs' claims for breach of express and implied warranties because of a lack of privity between the plaintiffs and PSI. The Supreme Court of Appeals of West Virginia abolished the requirement of privity of contract in an action for breach of an express or implied warranty. See Eastern, 549 S.E.2d at 276 (holding that "an innocent contractor" should be protected by a warranty and that "design professionals" should be held accountable for their work regardless of privity). Accordingly, PSI's motion to dismiss is denied as to these claims of the complaint.

D. Express Indemnity Cross-Claim

In its answer to the complaint, Cast & Baker filed cross-claims against the other defendants for "express and/or implied indemnity and contribution." PSI, as the only remaining defendant, filed a motion to dismiss the cross-claims. In West Virginia, for a party to recover under an express indemnity theory, that party must show a clear and definite contractual provision indicating the intention to indemnity against a certain liability. Sellers v. Owens-Ill. Glass Co., 191 S.E.2d 166, 169–70 (W. Va. 1972).

Cast & Baker contends that under West Virginia's system of notice pleading, its cross-claims are sufficiently pled. As this is a federal court sitting in diversity, the Federal Rules of Civil Procedure apply and this Court does not look to the West Virginia

Rules of Civil Procedure. See Rowland v. Patterson, 852 F.2d 108, 110 (4th Cir. 1988) ("Federal courts apply federal rules of procedure, both those promulgated in the Federal Rules of Civil Procedure as well as wholly judge made procedural rules, unless the Erie doctrine commands otherwise.") (citing Hanna v. Plumer, 380 U.S. 460 (1965)). As discussed above, a complaint should be dismissed "if it does not allege 'enough facts to state a claim to relief that is plausible on is face.'" Giarratano, 521 F.3d at 302 (quoting Twombly, 550 U.S. at 570). A pleading which is simply a "formulaic recitation of the elements of a cause of action" is not sufficient to state a valid claim for relief. Twombly, 550 U.S. at 555. Here, Cast & Baker did not state that there is a written contract that contains clear and definite language showing an intent to indemnity against a certain liability. Because Cast & Baker alleges no more than "labels and conclusions" in its cross-claim for express indemnity, this Court must grant PSI's motion to dismiss Cast & Baker's cross-claim for express indemnity for failure to state a claim. Id. However, this Court grants the motion to dismiss without prejudice and grants Cast & Baker leave to amend its cross-claim for express indemnity. Any amended cross-claim shall be filed within twenty-one days of the receipt of this memorandum opinion and order.

E.  Implied Indemnity and Contribution Cross-Claims

An implied indemnification claim is based on "the premise that the person seeking to assert implied indemnity – the indemnitee –

has been required to pay damages caused by a third party – the indemnitor." Sydenstricker v. Unipunch Prod., Inc., 288 S.E.2d 511, 515 (W. Va. 1982). Contribution "arises when persons having a common obligation, either in contract or tort, are sued on that obligation and one party is forced to pay more than his pro tanto share of the obligation." Id. at 516. At this time, a ruling by this Court would be premature on these cross-claims. Accordingly, PSI's motion to dismiss Cast & Baker's cross-claims for implied indemnity and contribution must be denied.

## V. Conclusion

For the reasons set forth above, defendant PSI's motion to dismiss the complaint is DENIED. Further, defendant PSI's motion to dismiss the cross-claims of defendant Cast & Baker is GRANTED IN PART and DENIED IN PART.

IT IS SO ORDERED.

The Clerk is directed to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:   January 26, 2010

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE